Beth K. Findsen (023205)
LAW OFFICES OF BETH K. FINDSEN, PLLC
7279 East Adobe Drive, Suite 120
Scottsdale, AZ 85255
(480) 584-6664
beth@findsenlaw.com
*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**IN AND FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| ROZANN G. BERGDALE,<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, NATIONAL ASSOCIATION; et al.,<br><br>Defendants. | Case No. 3:12-CV-08057-GMS<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A'S MOTION TO DISMISS**<br><br>(Assigned to Hon. G. Murray Snow) |

Rozann Bergdale ("Plaintiff"), respectfully moves this court to deny Defendants' Motion to Dismiss ("MTD"). Should the Court grant any part of the Defendants' Motion to Dismiss, Plaintiff seeks leave to amend. Plaintiff has only amended once to add in federal law claims resulting from the removal of her case.

### I. STANDARD OF REVIEW.

Dismissal is only appropriate when a party fails to sufficiently plead facts that support a legal claim. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

### II. INTRODUCTION.

Defendants begin with a false statement, "Plaintiff has not paid since June 2011 and seeks to avoid her obligation." Actually, Plaintiff paid the imposter Defendants through August 2011, and has always sought to pay her obligation to the right party, paying nine months of trial modifications and the "pick-a-payment" on her Bank of America, N.A. ("BANA") invoice for the permanent modification in reliance on false assertions that

-1-

BANA was a counter-party or the agent of a counter-party to her Note and Deed of Trust.

Defendant also cites *Hogan,[1]* which most significantly, on May 18, 2012, the Arizona Supreme Court vacated the opinion of the appellate court, holding that while Arizona's non-judicial foreclosure statutory scheme does not require a foreclosing lender to produce the note, if a claimed beneficiary or trustee lacked authority under the note or deed of trust, a borrower could maintain such a claim. In so holding, the Arizona Supreme Court conceded

> Hogan argues that a deed of trust, like a mortgage, '**may be enforced only by, or in behalf of, a person who is entitled to enforce the obligation the mortgage secures.**' RESTATEMENT (THIRD) OF PROP.: MORTGAGES § 5.4(c) (1997); *see Hill v. Favour*, 52 Ariz. 561, 568-69, 84 P.2d 575, 578 (1938). **We agree**.

*Hogan v. Washington Mut. Bank, N.A.*, CV-11-0115-PR, __ P.3d __ ¶6 (Ariz. May 18, 2012) (en banc) (emphasis added). To enforce a deed of trust, one must be empowered to enforce the obligation the trust deed secures. Lack of authority is a material issue.

The Arizona Supreme Court outlined the pleading deficiencies in *Hogan*, implying how a plaintiff properly would bring a rightful claim: (1) Hogan did not allege that WaMu and Deutsche Bank were not entitled to enforce the note, or "otherwise lack authority to enforce the notes"; (2) "Hogan did not dispute that he was in default"; (3) Hogan offered no reason to dispute the trustee's right to exercise the power of sale." *Id.* at ¶¶ 6, 7, 10, Plaintiff's pleadings allege in factual detail each of the *Hogan* deficiencies, and dismissal must be denied.

### III. ARGUMENT.

**A. Plaintiff's A.R.S. § 33-420 Claims Withstand Dismissal.**

Defendants urge the court to adopt an incorrect view that the Assignment, the Substitution of Trustee and the Notice of Sale do not assert an interest in real property, and are not encompassed by A.R.S. § 33-420. This is contrary to the plain language of A.R.S. § 33-420, and to bedrock principles of statutory interpretation. The statute's plain words and Arizona cases demonstrate that the instruments fall within the purview of A.R.S. § 33-420(A), and do not create an exception for a broad class of recorded documents.

---

[1] *Hogan v. Washington Mut. Bank, N.A.*, -- P.3d --, 2011 WL 3108343

A.R.S. § 33-420 states:
> A person purporting to *claim an interest in, **or** a lien **or** encumbrance against, real property*, who causes a document asserting such claim to be recorded in the office of the county recorder, knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is liable to the owner or beneficial title holder of the real property . . .

A court's goal in interpreting a statute is "to fulfill the intent of the legislature that wrote it." *State v. Williams,* 854 P.2d 131, 133 (Ariz. 1993) (internal citations omitted). In determining a legislature's intent, a court first looks to the language of the statute itself. *Id.* If the language of the statute is plain, a court "need look no further." *Id.* Additionally, a court must give effect to each word of the statute. *Guzman v. Guzman,* 854 P.2d 1169, 1173 (Ariz. Ct. App. 1993). "A statute is to be given such an effect that no clause, sentence or word is rendered superfluous, void, contradictory or insignificant." *Id.* The language of statute is most reliable evidence of its intent, and in absence of clearly expressed legislative intent to contrary, that language must ordinarily be regarded as conclusive. *State ex. Rel Corbin v. Pickrell*, 667 P.2d 1304, 1309 (Ariz. 1983).

"[S]tatutes which are designed to redress existing grievances and introduce regulations conducive to the public good are remedial." *Sellinger v. Freeway Mobile Home Sales, Inc.,* 521 P.2d 1119, 1122 (Ariz. 1974) (en banc)(internal citations omitted). A.R.S. § 33-420 is a remedial statute because it provides for a remedy to expeditiously resolve false documents recorded against real property. Because A.R.S. § 33-420 is a remedial statute, it is to be broadly construed to effectuate its purpose. *See Calvert v. Farmers Ins. Co. of Arizona,* 697 P.2d 684, 687 (Ariz. 1985)

A.R.S. § 33-420 makes it sufficient to "purport[] to claim an interest in, or a lien or encumbrance against, real property." The words "interest", "lien", and "encumbrance" each have distinct plain meaning. The legal definition of the word "interest" is "a legal share in something; all or part of a legal or equitable claim to or right in property." BLACK'S LAW DICTIONARY (9th ed. 2009). "Interest" is broad and includes more specific words i.e. right, title, share. The word "share" is defined as "an allotted portion owned by, contributed by or due to someone". BLACK'S LAW DICTIONARY (9th ed. 2009). Thus, the word "interest" includes an ownership right in property and differs from the narrower word

-3-

"lien" that is also used in the statute. The legal definition of "lien" is "a legal right or interest that a creditor has in another's property, lasting usually until a debt or duty that it secures is satisfied." BLACK'S LAW DICTIONARY (9th ed. 2009). Thus, the word "lien" is a specific type of "interest," i.e. a creditor's interest. The legal definition of "encumbrance" is "a claim or liability that is attached to property or some other right and that may lessen its value, such as a lien or mortgage; any property right that is not an ownership interest." BLACK'S LAW DICTIONARY (9th ed. 2009). An "encumbrance," therefore, can be a lien but does not include an ownership interest.

Combine the definitions with the express conjunction-"or"- and it is clear that the statute is meant to include three types of documents: those that assert (1) an "interest in" real property, (2) a "lien against" real property, and (3) an "encumbrance against" real property. Each word must be given effect. The legislature used these three distinct words and the conjunction "or" for a reason. Thus, the plain meaning of these words shows that there are three distant types of documents encompassed by A.R.S. § 33-420(A).

The three false instruments in this case assert an interest in real property. (1) An assignment transfers a beneficial interest in a security interest to sell real property from one party to another. (2) A notice of trustee's sale which schedules the date on which the property will be sold asserts an interest in the transferability of Plaintiff's property. (3) The naming of a new trustee places a new title interest-bare legal title-in the trustee. *See In re Bisbee,* 754 P.2d 1135 (Ariz. 1988).

The Arizona Supreme Court specified "the trust deed transfers an interest in real property, securing the repayment of the money owed under the note." *Hogan v. Washington Mut. Bank, N.A.*, No. CV-11-0115-PR, p. 9, ¶10 (Ariz. May 18, 2012)(en banc). In another recent case, the Court treated the assignment of the beneficial interest in the deed of trust as an "interest in real property" "[T]he statute presents a transferor of a real property interest with options and consequences—either record a document evidencing the transfer or indemnify the transferee." *See In re Vasquez*, 228 P.3d 1053, 1056 (Ariz. 2011)(en banc). Thus, the Court made it clear that an assignment of a deed of trust is an assertion of an interest in real property that is impacted by a failure to record. *See id.*

If, as the Supreme Court has recently reaffirmed, a deed of trust is an interest in real property, and an assignment of a deed of trust is an interest in real property, other interests

derived from the deed of trust instrument must also be deemed as interests, liens or encumbrances to real property.

The challenged recordings also constitute "liens," and "encumbrances" but Defendants do not even allude to these other categories of documents that fall within the statute's prohibitions.

### 1. *Schayes* is Flawed and Should Not Be Followed.

Defendants rely heavily on an uncontested federal court decision, and cases that followed this opinion. *Schayes v. Orion Financial Group, Inc.* 2011 WL 3156303 (D. Ariz. 2011 (slip copy). But *Schayes* misinterpreted A.R.S. § 33-420 and has created a line of Arizona district court cases that also disregard the rules of statutory interpretation. This Court should not follow the *Schayes* decision, or its progeny.

The *Schayes* court determined, in absence of any opposition by the plaintiffs (who failed to file a response because they had filed bankruptcy), that there was no liability under A.R.S. § 33-420(A) "because assignments of mortgages and notices of trustee's sales are not 'document[s] asserting' a 'claim [of] interest in, or a lien or encumbrance against[ ] real property.'" *Id.* The court based this conclusion on the mistaken belief that the only reported decisions in Arizona applying A.R.S. § 33-420 involve documents "purporting to create an interest, lien, or encumbrance, such as a lis pendens, mechanics lien, or the deed of trust itself." *Id.*

This Court should not follow the district court's order in *Schayes* because the Arizona Supreme Court's recent decisions suggest otherwise, and because the reasoning was flawed, and did not yield to bedrock principles of statutory construction.

### 2. The Assignment Contained Material Misrepresentations.

Plaintiff pled specific material, false statements within the recorded assignment, that would render the assignment void. Namely, Mortgage Electronic Registration Services, Inc. ("MERS") did not hold a valid interest to transfer on October 18, 2011, nor did the "authorized signer" Christopher Herrera ("Herrera"). The note transferred three times after origination, and MERS, acting "solely as nominee," (the only authorized capacity in which MERS acts per the Lender-drafted Deed of Trust), could not derive authority from BANA, as successor to Countrywide FSB, as it purported to do.

Plaintiff pled that MERS lacked authority on its own to effect the transfer in 2011

because (1) other evidence suggests the note was transferred in 2007, and the deed presumably went with it per *Vasquez*, and A.R.S. § 33-817. (FAC ¶74, ¶75, ¶97); (2) the Deed of Trust language and the statutory definition of "beneficiary" under A.R.S. § 33-801 confine MERS to acting "solely as nominee" for a principal; (3) Herrera, the signatory lacked authority to sign because he claimed to be an Assistant Secretary of MERS, as Nominee for Countrywide. Herrera actually appears to be a BAC Home Loan Servicing, LP ("BAC") employee. This document was notarized in California, although MERS is a Delaware corporation located in Virginia, evidence that the notary did not witness the signature for genuineness. (FAC ¶71) "On many other mortgage assignments, Herrera's name appears as the signatory for numerous different originating lenders, many defunct at the time of the 'assignment'". (FAC ¶72). "The Assignment is void because Christopher Herrera is not an officer of MERS or otherwise legally appointed a certifying officer of MERS." (FAC ¶81).

The identity of Plaintiff's contractual counter-party is material as it designates (1) to whom her promises run; (2) where her payments go; (3) who can release her note and deed of trust if satisfied; (4) who can properly negotiate regarding a possible modification. The DOT secures Plaintiff's promise to perform as to the "Lender," or a valid successor in interest. (FAC ¶¶17, 111, 121, 141). Plaintiff's promise to perform does not run to just anybody the Defendants decide to name. Also, Arizona law (A.R.S. § 33-801.01) supports the materiality of Plaintiff's entitlement to know their Lender's identity, so that she could investigate and assert their defenses to foreclosures, including that the trustee and the beneficiary lack authority or standing under the note.

Moreover, *Cervantes* did not hold that the use of MERS was valid in all cases, merely that the plaintiffs had not pled a factually specific cause of action for the invalidity of MERS under various tort claim theories. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034 (9th Cir. 2011). Rather, as Judge Teilborg acknowledged:

> The legality of MERS' role as a beneficiary may be at issue where MERS initiates foreclosure in its own name, **or where the plaintiffs allege a violation of state recording and foreclosure statutes based on the designation**.

*Id.* at 1044 (emphasis added). Here, Plaintiff pled exactly that.

### 3. Substitution of Trustee.

Plaintiff pled that the Notice of Substitution was demonstrably false, breached Plaintiff's Deed of Trust and ran afoul of A.R.S. § 33-804, because it was made by an unauthorized party who was not a beneficiary or a Lender or a Lender's Successor in Interest. (FAC ¶84, ¶85). The Substitution fails to follow the strict guidelines of the non-judicial foreclosure statute and the express terms of the Deed of Trust.

As Plaintiff pled, the Deed of Trust specifies that the "Lender" may substitute the Trustee of the DOT per ¶24 of the Deed of Trust stating that the "Lender may" appoint or remove a successor trustee. (FAC ¶¶98, 109). This is the only time a substitution is mentioned and no other party is so authorized. The DOT mentions a "Loan Servicer" when intended, and BANA has never demonstrated its authority as a servicer, with the identity of its true principal unproven. (FAC ¶87). Agency must be established by proof of acts of the principal, not the agent, and BANA's argument that it is somehow "common sense" that it is the servicer is unavailing. *See Litchfield v. Green*, 33 P.2d 290, 292 (Ariz. 1934).

This is corroborated by A.R.S. § 33-804, which provides that a "beneficiary" defined as the person "for whose benefit a trust deed is given"[2] can substitute the trustee, with the signatures of all beneficiaries. (FAC ¶87, ¶88). Recontrust was not properly substituted by a valid beneficiary as defined in A.R.S. §33-801, and the substitution was a legal nullity. (FAC ¶90).

### 4. Notice of Sale.

The Notice of Sale purports to sell real property at auction, purporting to assert an obvious "interest" in real property. Bergdale could certainly not sell or refinance with such an "encumbrance" on her title.

The Notice of Sale was false both substantively and procedurally, as pled in the Complaint. (FAC ¶93). First, Recontrust was not a validly appointed Trustee. (FAC ¶94). The mandates of Plaintiff's DOT regarding notice, and the substantive identities of the parties were not met. The Plaintiff's DOT provided that only a Lender may accelerate the

---

[2] A.R.S. § 33-801 (1). In Oregon, identical language, "person for whose benefit a trust deed is given" defining the beneficiary was interpreted as meaning that the "beneficiary" was intended to be the party entitled to receive payments on the Note. *James v. Recontrust*, No. 11-CV-00324, 2012 WL 653871 (D. Ore. Feb. 29, 2012).

-7-

Note, declare a default, or substitute the Trustee, (FAC ¶94) and that the Lender shall notify the Borrower prior to acceleration and give Plaintiff a reasonable opportunity to cure. The DOT specified that Plaintiff should be given thirty days to cure, prior to acceleration, and then the statutory 90-days. The time periods do not run concurrently. *Schaeffer v. Chapman*, 176 Ariz. 326, 861 P.2d 611 (1993) ("We repeatedly have held that contracts will be strictly construed to avoid forfeitures" and "30-day notice period in deed of trust was separate from 90-day period set forth by statute and lenders' failure to give total of 120-day notice prior to sale was breach of deed of trust.")

The Notice of Sale was signed by Jillian Hawkins, an alleged Assistant Vice President of Recontrust, not a valid trustee appointed by a valid beneficiary, and was not valid notice under A.R.S. §§33-801- 812. Neither Recontrust nor BANA had the authority to activate the power of sale or notice a trustee's sale on Plaintiff's Property. (FAC ¶94).

BANA was not the record Lender or the Beneficiary or a legal and authorized successor in interest under Plaintiff's DOT. Recontrust's "Notice of Sale" violated the requirements of A.R.S. § 33-807, the requirements of the DOT itself, and ran afoul of A.R.S. § 33-420. Plaintiff suffered clouded title, the stress of an unauthorized trustee's sale, and legal costs and fees to attempt to redress these BANA actions.

**B.    Defendant Clearly Violated the Arizona Consumer Fraud Act.**

The Arizona Consumer Fraud Act ("CFA") is a "broadly drafted remedial provision" "designed to eliminate unlawful practices in merchant-consumer transactions." *Madsen v. Western Am. Mortg. Co.*, 694 P.2d 1228, 1232 (Ariz. Ct. App. 1985). The CFA defines an "Advertisement" as an "attempt by publication, dissemination, solicitation **or** circulation, oral or written to acquire any title or interest in any merchandise." A.R.S. § 44-1521(1). "Merchandise" is "objects… real estate or services." A.R.S. § 44-1521(5). "Oral negotiations to restructure a consumer loan have been considered an "advertisement" within the meaning of the Act." *Narramore v. HSBC Bank USA, N.A.*, CV-09-635-TUC-CKJ, 2010 WL 2732815 (D. Ariz. 2010). The intent required to constitute an "act" is only "intent to do the act involved." Intent is a question of fact. *State ex rel. Horne* v. *Autozone*, No. CV-11-0291-PR, ___P.3d___, p. 9 ¶15 (Ariz. May 15, 2012).

    **1.    Plaintiff Relied on Defendants Statements and Documents Regarding her "Loan Modifications."**

Under the CFA, reliance need not be reasonable. *Perry v. Hansen*, 120 Ariz., 269,

-8-

585 P.2d 574, 577 (Ct. App. 1978). *Id.* "Unreasonable reliance exists where a party does not have actual knowledge of the deception, but should." *Gerber v. Wells Fargo Bank, N.A.*, CV 11-01083-PHX-NVW 2011 WL 5007921 (2011).

Plaintiff did plead and show that she reasonably relied on Defendants' good faith effort to modify her existing loan by the terms it represented, and to not implement foreclosure proceedings while it did so. (FAC ¶ ¶ 133, 134, 154, 178). Her reasonable reliance is clear when one analyzes the numerous payments she made to BAC and BANA under the so-called "trial modifications" and the permanent modification.

Defendants now assert that because Plaintiff received an offer to permanently *increase* her principal and her monthly payment, that Defendants met their obligation. (2nd MTD 10:4). Common sense dictates that any borrower seeking a loan modification is looking for more favorable terms, in interest rate, or in the reduction of monthly payments. Defendants BANA and BAC asserted that it wanted to help Plaintiff keep her home (FAC ¶ 154), knowing that she needed to reduce her payments, and giving her trial modifications with reduced payments--albeit misapplying payments and initiating foreclosure.

Plaintiff's original monthly payment was $3,195.50/ month (including PMI coverage) (FAC ¶¶ 38,52). In the trial modifications, Plaintiff's payments were reduced to $2,325.00/month, and BAC gave conflicting information on whether this amount included PMI. Plaintiff paid a six-month term on her first "trial modification" and the full three months on her second trial modification, with the promise that her permanent modification would be similar. (FAC ¶57, 58, 61).

The permanent modification payment *increased* Plaintiff's monthly payment to $3,541.27 and did not include the same PMI coverage amount, totaling $3,856.27 per month. (FAC ¶ 52). It also required Plaintiff to pay a claimed escrow shortage of $560.00 in PMI within a month. *Id.* Remember, Defendant admitted Plaintiff was eligible for a loan modification, yet it gave her worse terms than her original mortgage. (2nd MTD 10:4).

Also deceptively, BAC sent Plaintiff an invoice that allowed her to "pick-a-payment," with a header title "Your Payment Choices This Month" with the option of paying $2,395.39. (FAC ¶ 61) Therefore, the Statement received from Defendant related to the permanent modification states that Plaintiff had a choice of payment.

Defendants assert that after it revoked her "pick-a-payment" that Plaintiff stopped

paying. (2nd MTD, 10: 15-18). This is untrue. Plaintiff paid through August 2011 on the so-called permanent modification. She also attempted to deal with BAC in good faith by discovering and rectifying the $.39 error, by paying her February and March statements and paying her April statement in an amount that exceeded the amount owed. (FAC ¶¶ 62, 63). Yet BAC still wanted more—more than Plaintiff even previously owed under her original loan. (FAC ¶ 64, 155, 156).

Plaintiff pled how BAC and BANA misapplied payments and misrepresented amounts due, contrary to Defendants' anemic assertion that she "fails to explain what was demanded, what she believes she actually owed, or that she paid what BANA demanded." (Dkt. 14 10:26-28; *see* FAC ¶¶ 38-65). BAC gave Plaintiff the run-around while she devoted an exorbitant amount of time, effort and money to receive a loan modification from a party that she thought had the authority to grant her one. (FAC ¶¶ 130, 158). Many courts have held that a servicer's misrepresentations regarding a trial modification plan can state a claim under unfair competition laws, and for breach of contract. *E.g. Sutcliffe v. Wells Fargo Bank, N.A.*, 2012 WL 1622665, at *17-18 (N.D. Cal. May 9, 2012). [3]

### 2. Plaintiff Met Rule 9(b) Pleading Standards.

A party alleging fraud must "state with particularity the circumstances constituting fraud." *Burge v. Freelife Int'l, Inc.*, CV09-1159-PHX-JAT, 2009 WL 3872343 (D. Ariz. 2009) (citing *Bosse v. Crowell Collier & MacMillan,* 565 F.2d 602, 611 (9th Cir.1977)). Rule 9(b) requires the "pleader [to] state the time, place, and specific content of the false representations as well as the identities of the parties." *Id.*

Compared to common law fraud, the CFA has a relaxed standard on reliance and intent. The intent required to constitute an "act" is only "intent to do the act involved." Defendants' intent is a question of fact. *State ex rel. Horne v. Autozone*, No. CV-11-0291,

---

[3] A trial modification plan can form an enforceable agreement. *See Wigod v. Wells Fargo Bank*, 637 F.3d 547 (7th Cir.2012) (plaintiffs stated breach of contract claim based on trial plan and it was error to dismiss); *In re Ossman*, 2012 WL 315485, at * 3–4 (Bkrtcy.C.D.Cal., Jan.31, 2012) (denying motion to dismiss breach of contract claim based on trial modification); *Gaudin v. Saxon Mortgage Services, Inc*., 2011 WL 5825144, at *3–4 (N.D.Cal. Nov.17, 2011) (same); *Kennedy v. Wells Fargo Bank, N.A*., 2011 WL 4526085, at *2–3 (C.D.Cal. Sept.28, 2011) (same); *Darcy v. CitiFinancial, Inc*., 2011 WL 3758805, at * 5–6 (W.D.Mich., Aug.25, 2011) (same); *Belyea v. Litton Loan Servicing, LLP*, 2011 WL 2884964, at *8 (D.Mass. July 15, 2011) (same); *In re Bank of Am. Home Affordable Modification Program (HAMP) Contract Litig*., 2011 WL2637222, at * 3–4 (D.Mass. July 6, 2011) (same); *Turbeville v. JPMorgan Chase Bank*, 2011 WL 7163111, at * 4–5 (C.D.Cal., April 4, 2011) (same).

___P.3d___, p. 9 ¶15 (Ariz. May 15, 2012). Reliance need not be reasonable. *Perry v. Hansen*, 120 Ariz., 269, 585 P.2d 574, 577 (Ct. App. 1978).

Under Rule 9(b), Plaintiff pled as follows:

**Who:** BANA (FAC ¶¶ 61, 62).

**What:** Permanent modification on "pick-a-payment" terms or trial mod terms upon successful completion of plan. No foreclosure during negotiations and plan.

**Misrepresentation:** Plaintiff had the option of choosing a payment for that month. The payment choices option states "The Amortized & 15-year Amortized Payment Choice (Amortized Payment Choices) amounts are based on the assumption that these payments will always be received on the scheduled due date. **You are not required to pay these amounts.**" (FAC ¶ 61). (emphasis added).

**Why:** In reality, if Plaintiff did not pay the minimum amortized amount, Plaintiff would be liable in future months for the difference in the amount owed if she chose the "interest only payment" option which Defendants knew she would not be able to afford. (FAC ¶¶ 63, 64).

**When:** The initial solicitation was 12/20/10 but Plaintiff was informed of her obligation to pay more than the pick-a-payment amount around March 2011. (FAC ¶ 63).

**Where:** "Pick-a-payment" invoice mailed to Plaintiff (FAC ¶ 61; Ex. A).

. . .
**Who:** BANA

**What:** Acting as though they are the beneficiary and/or servicer of Plaintiff's loan with knowledge that they have no such authority. Requesting payments, and authorizing various entities to record documents with the Yavapai County Recorder's Office. (FAC ¶¶ 66, 69, 71, 79, 83, 85, 94, 128, 129, 130, 135).

**Misrepresentations: 1.** BANA is the "lender" under the DOT, note-holder and/or is the beneficiary (FAC ¶¶ 6, 11, 85, 69, 104, 111, 118(a)), 119, 120, 121, 123). **2.** BANA had valid authority granted to it from MERS. (FAC ¶¶ 66, 67, 69, 71, 83, 103, 104, 107). **3.** BANA had the authority to substitute the Trustee. (FAC ¶¶ 85, 86, 87, 88, 90, 108, 110, 117). **4.** BANA had the authority to Notice a Trustee's Sale through Recontrust (an invalid trustee). (FAC ¶¶ 94, 98, 118).

**Why:** Plaintiff pled that the Note and Deed of Trust entered a Securitized Trust in late 2007 or early 2008 (FAC ¶74) To have been lawfully conveyed and not void, the note must have gone through two true sales and an assignment during that time frame, information that is inconsistent with the disputed "Assignment." (FAC ¶74, ¶76). "A

-11-

debtor may assert against an assignee all equities or defenses existing against the assignor prior to notice of the assignment, and any matters rendering the assignment absolutely invalid or ineffective." *Greene v. Reed*, 486 P.2d 222, 224 (Ariz. Ct. App. 1971).

**When:** BANA recorded a Substitution of Trustee on November 30, 2011, a recording that is only authorized by a beneficiary *See* A.R.S. § 804 (FAC ¶ 108, Ex. C). BANA asserted that it is the "beneficiary" when it recorded the Notice of Trustee's Sale on November 30, 2011 (FAC ¶¶ 93, 119, Ex. D). The Assignment occurred on October 18, 2011 (FAC ¶ 103, Ex. B).

**Where:** Yavapai County Recorder's Office. (FAC ¶ 69).

## C. QUIET TITLE.

Plaintiff prays to quiet title against the parties claiming interests through the false recordings, not to invalidate the DOT. Plaintiff followed statutory procedures of A.R.S. § 12-1103, and wrote pre-litigation letters to the Defendants, providing an opportunity to Defendants to correct the title record, and to execute a quit claim. (FAC ¶ 143).

A verified quiet title action is not properly dismissed on the pleadings. *Wynn v. Toll Brother AZ Construction, LLC*, 2:09-cv-01587-RCJ (D. Ariz. 2011). It is sufficient to allege that a defendant claims an adverse estate or interest in the land. *Ely v. New Mexico & A.R. Co.*, 129 U.S. 291, 293 (1889); *see* (FAC ¶ 138).

Also, the "tender rule" has many exceptions. Importantly, Plaintiff does not owe unauthorized parties their contractual performance. Defendants have no claim to title or interest in the subject property and lack authority obtain tender. *See Kentera v. Fremont Inv. and Loan*, No. 10-CV-8259-GMS, 2012 WL 1132760, at *5 (D. Ariz. 2012) (slip copy) (citing *Martinez v. America's Wholesale Lender*, 446 Fed. Appx. 940 (9th Cir. Aug. 15, 2011) (denying summary judgment for the loan servicer stating "[t]he tender rule does not apply to a void, as opposed to a voidable, foreclosure sale.")). *See also Vogan v. Wells Fargo Bank, N.A.*, 2011 WL 5826016, at *8 (C.D. Cal. 2011)("[t]he Court holds that the tender requirement does not apply to this case because Plaintiffs are challenging the beneficial interest held by U.S. Bank in the deed of trust.").

Defendants cite *Farrell v. West*, to argue that full payment is a requisite to bringing a quiet title action. 57 Ariz. 490, 114 P.2d 910 (1941) ("*Farrell II*"). However, in analyzing *Farrell I and II*, Judge Jones determined that "*Farrell II* does not appear to stand

-12-

for the proposition that a quiet title action is totally unavailable whenever a plaintiff does not own the subject property free and clear, but only for the uncontroversial proposition that the form of a quiet title plaintiff's judgment is circumscribed by equity." *Wynn v. Toll Brothers AZ Construction, LLC*, 2:09-cv-01587-RCJ (D. Ariz. 2011). Thus, while equity may require a party to pay as part of the remedy, payment in full—especially to the wrong party—is not required at the initial pleading stage. Plaintiff has been willing to tender amounts owed to an authorized beneficiary.

### D. BREACH OF GOOD FAITH & FAIR DEALING.

The covenant of good faith and fair dealing is legally implied in every contract. *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395*, 201 Ariz. 474, 38 P.3d 12 (2002). The duty's essence is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship. *Rawlings v. Apodaca*, 151 Ariz. 149, 153-54, 726 P.2d 565, 569-570 (1986).

A borrower may bring defenses or claims against an assignee. *Greene v. Reed*, 486 P.2d 222, 224 (Ariz. Ct. App. 1971)("A debtor may assert against an assignee all equities or defenses existing against the assignor prior to notice of the assignment, and any matters rendering the assignment absolutely invalid or ineffective"); *Mahan v. First Nat'l Bank of Ariz.*, 677 P.2d 301, 304 (Ariz. Ct. App. 1984)("In order for agent who negotiates contract on behalf of his principal to avoid personal liability, he must disclose not only his agency but also identity of his principal.").

Defendant BANA assumed liability for BAC's misdeeds BAC assigned servicing rights to BANA. BAC implemented foreclosure proceedings based upon its own errors, and despite its representations that it would not foreclose during the trial modification period. Plaintiff pled how scheduled to pay $2,325.00 to be posted on November 17, 2009 and received a confirmation number. (FAC ¶ 40). On November 13, she contacted BAC to confirm and was told to pay again. (FAC ¶ 43). She did as instructed and paid the amount again and the associate promised to cancel the previous transaction if found. (FAC ¶ 43). Only six days after making a voluntary double payment, BAC sent Plaintiff a Notice of Intent to Accelerate stating that Plaintiff owed $9,007.80 and that foreclosure proceedings would be initiated unless cured. (FAC ¶ 45). This is one example of many pled.

-13-

Defendant BANA is also liable for continuously misrepresenting the amount owed each month and continually threatening Plaintiff regarding both her property taxes, and force-placed insurance. (FAC ¶¶ 40-56). Even if BANA had no original obligation to modify, it commenced two trial modifications and a permanent modification, assuming a duty of honesty and good faith. "[B]ecause a party may be injured when the other party to a contract manipulates bargaining power to its own advantage, a party may nevertheless breach its duty of good faith without actually breaching an express covenant in the contract." *Wells Fargo* 201 Ariz. at 491. BANA encouraged Plaintiff to participate in its trial modification programs and agreed that Plaintiff qualified for a permanent loan modification. BANA misused its power to manipulate Plaintiff into increasing her monthly payments and her principal by more than $20,000.00.

Last, contrary to Defendants' assertions, the permanent modification began on January 1, 2011 and Plaintiff did make payments pursuant to the "pick-a-payment" option provided to her by BANA. (Dkt. 9-1, Ex. 1 ¶1). Because the pick-a-payment offered her a reduced payment than her original loan, she made the payments. (FAC ¶¶ 61-63). BANA has breached its duty of good faith and fair dealing pursuant to the modifications.

### E. GOOD SAMARITAN DOCTRINE.

Economic harm can form a basis for a Good Samaritan claim. *Renteria v. U.S.*, 452 F. Supp.2d 910 (D. Ariz. 2006)(applying the doctrine to lenders); *Jeter v. Mayo Clinic Arizona*, 121 P.3d 1256, 1272 (Ariz. Ct. App. 2005). In the first *Silving v. Wells Fargo Bank, NA*, 800 F. Supp.2d 1055, 1072-73 (D. Ariz. 2011) ("*Silving I*"), the Court found that a party placing distressed borrowers in loan modification programs, can be held liable under the Good Samaritan Doctrine. However, the court changed its tune in *Silving v. Wells Fargo Bank, N.A.*,[4] CV-11-0676-PHX-DGC, 2012 WL 135989, *10 (D. Ariz. 2012) ("*Silving II*") finding that plaintiffs must allege facts showing that defendants obligated themselves to assist in a loan modification and as a result the harm to plaintiff increased. *Kentera*, 2012 WL 1132760 at *8- 9 (Good Samaritan claim survived dismissal).

Here, unlike *Silving II*, Plaintiff pled how she entered into trial modifications that decreased her monthly payment. Despite Defendants' recurrent baits-and-switches,

---

[4] *Silving* recently has been heard by the Arizona Court of Appeals via a special action appeal, but no opinion has yet been released.

-14-

material errors, and simultaneous foreclosure proceedings, Plaintiff accepted the trial modifications and made payments under the modifications as instructed. (FAC ¶¶ 168, 172-78).

BAC informed Plaintiff that she qualified for and would receive a permanent modification on terms similar to her trial modifications. The trial modification decreased her payment. Instead, the permanent modification increased her payment and her principal. If Plaintiff knew the truth, she would not have taken Defendants' advice to miss a payment so that she could qualify for a permanent modification. (FAC ¶ 167). Having relied and paid two full trial modifications, Plaintiff is now is facing foreclosure, or paying increased monthly payments. (FAC ¶ 179). Plaintiff also incurred overdraft fees (due to a BANA's associate's misstatements), damage to her credit rating, loss of equity, penalties and costs, clouded title and unwarranted tax liability. (FAC ¶ 179). Plaintiff stated a claim.

### F. FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA").

The FDCPA is a strict liability statute that Congress intended as a strong response to "abundant evidence of the use of abusive, deceptive and unfair debt collections by many debt collectors," and that imposes civil liability on debt collectors who engage in a range of prohibited conduct, without regard to their knowledge or intent. *Reichert v. National Credit Systems, Inc.*, 531 F.3d 1002 (9th Cir. 2008). Under the strict liability framework, proof of a *single* FDCPA violation is sufficient to support *summary judgment for the plaintiff. Isham v. Gurstel, Staloch & Chargo, P.A.*, 738 F. Supp. 2d 986, 992 (D. Ariz. 2010).

A non-originating entity that attempts to collect a debt is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired. §1692a(6)(F)(iii). The same is true of a loan servicer, which can either stand in the shoes of a creditor or become a debt collector, depending on whether the debt was assigned for servicing before the default or alleged default occurred. *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106–8 (6th Cir.1996); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir.1985). BANA incorrectly asserts that Bergdale failed to plead that BANA was a "debt collector." But Plaintiff's pleadings and the FDCPA standard show otherwise.

Neither BAC nor BANA originated the subject loan. The originator was Countrywide Bank, FSB. Plaintiff pled that BAC began sending her default letters noticing

that it considered her to be in "default," as early as November 24, 2009, due to BAC's own errors applying payments. (FAC ¶45). BAC sent acceleration letters (FAC ¶47, ¶54, ¶64), dunning letters, and made threatening calls (FAC ¶56) even though she was paying in accordance with two complete "trial programs." Many of the phone calls and letters misrepresented amounts owed, and to whom, and were harassing as to time and content.

In June 2011, BAC sent a notice that it was "transferring the servicing of home loans by BAC Home Loan Servicing, LP to its parent company, Bank of America, N.A., effective July 1, 2011." Also, BANA's Assignment claimed that MERS assigned the beneficial interest in the DOT to BANA on October 18, 2011. (FAC ¶66). By admission, BANA claimed new ownership after BAC was already treating Plaintiff as in default.

Indeed, the FDCPA applies where the servicer *treats* the loan as being in default even if it is not. *Bridge, et al. v. Ocwen Fed. Bank*, No. 09-4220, 2012 WL 1470146, ___F.3d ___ (6th Cir. Apr. 30, 2012)(reversing district court's dismissal of FDCPA claims of debtor harassed by purported mortgage loan servicer). *Bridge* began with "seemingly innocuous accounting errors" by the loan servicer, that were supposedly "corrected" yet "unremitting collection activity was undertaken," and "foreclosure proceedings were instituted." The appellate Court rejected the loan servicer's "disingenuous" argument that the debtor was not really in default, so it was not a debt collector:

> [T]his argument is exemplary of an unsettling trend in FDCPA claims. Defendants seek to have it both ways: after having engaged in years of collection activity *claiming a mortgage is in default*, Defendants now seek to defeat the protections of the FDCPA by relying on Plaintiffs' position throughout those years that the *mortgage is not in default*.

*Bridge*, 2012 WL at *5. The Court reiterated that the FDCPA "was intended to protect victims of all such errors, irrespective of the collector's intent." *Id.*

A debt collector may not misrepresent the amounts, seek to collect amounts not owed, or "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e. BAC and then BANA repeatedly dunned Bergdale for improper amounts, misapplied payments, and wrongly reported her credit and instituted foreclosure proceedings based on their own mistakes, (FAC ¶¶38-65, ¶¶181-189) even though Bergdale is not in default to BAC or BANA, because neither is party or a valid agent of a party to her contracts.

-16-

### G. NEGLIGENCE PER SE.

Violation of a statute that defines a specific act constitutes conclusive evidence of negligence per se. *See* W. PAGE KEETON, PROSSER AND KEETON ON THE LAW OF TORTS § 36 at 229-30 (5th ed. 1984). Where there is a valid statute, violation of the statute proximately causing damages to another is actionable under negligence per se. *Salt River Valley Water Users' Association v. Compton*, 8 P.2d 249, 251 (Ariz. 1932). Negligence per se applied to statutes which "proscribe certain specific acts," and it establishes duty and breach. *Griffith v. Valley of Sun Recovery & Adjustment Bureau, Inc.*, 613 P.2d 1283, 1284-86 (Ariz. Ct. App. 1980).

The false claims statutes aim to protect real property owners from wrongful claims, clouds, and encumbrances. Plaintiff has title to the subject property. Plaintiff detailed how Defendant BANA violated A.R.S. § 33-420 and the criminal version of A.R.S. § 39-161. (FAC ¶ 127- 136, 193). *See also Kentera*, 2012 WL 1132760 at *8- 9 (violation of these statutes supported a negligence per se claim). Defendants BAC and BANA had a duty to abstain from recording false documents under the statutes, and breached that duty.

Defendants also violated notary statutes in the execution of the Substitution of Trustee and Assignment under A.R.S. §§ 41-313(B)(1), 33-505, and 41-330. (FAC ¶¶ 71, 103, 105, 116, 192). Notary statutes protect the public from false documents by verifying the executing party is who he says he is, and is authorized. Plaintiff pled Defendants improperly notarized documents without having personally witnessed the signatures or verifying authenticity. (FAC ¶¶ 71, 103, 192). BANA stated that it "it is lawful for a notary public who is a[n]…employee of a corporation to take the acknowledgement or oath of any party" thus conceding that the notary was an employee. (2nd MTD 6:26). Therefore, Defendants employed notaries who violated the specific notarial duties, causing Plaintiff to incur costs, fees and clouds on title, and unauthorized foreclosure proceedings and the commensurate stress.

In conclusion Defendants' Motion to Dismiss should be denied in its entirety.

RESPECTFULLY SUBMITTED this 31st day of May, 2012.

LAW OFFICE OF BETH K. FINDSEN, PLLC

By: /s/ Beth K. Findsen
Beth K. Findsen (#023205)
*Attorney for Plaintiff*

-17-

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 31, 2012, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing and mailed via U.S. Mail to the following CM/ECF registrants:

I hereby certify that on May 31, 2012, I served the attached document by United States Mail on the following, who are not registered participants of the CM/ECF System:

Gregory Bryan Iannelli<br>
Bryan Cave LLP - Phoenix, AZ<br>
2 N Central Ave., Ste. 2200<br>
Phoenix, AZ 85004-4406

By: /s/ BKF