**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rozann G. Bergdale,<br><br>Plaintiff,<br><br>vs.<br><br>Countrywide Bank FSB; Bank of America, National Association; and John Does,<br><br>Defendants. | No. CV-12-8057-PCT-GMS<br><br>**ORDER** |

Pending before the Court is a Motion to Dismiss First Amended Complaint (Doc. 14) filed by Defendants Countrywide Home Loans, Inc., Bank of America, N.A., BAC Home Loan Servicing LP, Mortgage Electronic Registration Systems, Inc., and ReconTrust. For the following reasons, the Court **GRANTS** the motion.[1] Plaintiff Bergdale will have a very limited opportunity to amend.

## BACKGROUND

According to the facts alleged in Plaintiff's Complaint, Plaintiff Rozan Bergdale purchased a home in Yavapai County, Arizona, around October 26, 2007. (Doc. 10 ¶ 15, Ex. A at 1-3.) To finance this purchase, she obtained a loan of $576,000.00 from Countrywide Bank. (*Id.* Ex. A at 1-2.) The parties executed and recorded the Deed of Trust in the office of the Yavapai County Recorder on Oct. 31, 2007. (*Id.* ¶ 15.) The deed

---

[1] The Parties' requests for oral argument are denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

1  designates Countrywide as the "Lender," Fidelity National Title Insurance as the
2  "Trustee," and Mortgage Electronic Registration Systems, Inc. ("MERS") as "the
3  beneficiary under this Security Instrument" and "nominee for Lender and Lender's
4  successors and assigns." (*Id*. Ex. A at 1-2.) Subsequently, Bank of America acquired
5  Countrywide, and BAC Home Loan Servicing, a Bank of America subsidiary, began
6  servicing the loan. (*Id*. ¶¶ 3, 6-7.)

7  Bergdale's monthly payment under the loan was originally $3,195.50. (*Id*. ¶ 39.)
8  The Complaint acknowledges that Bergdale missed a monthly payment, without
9  specifying when it was missed, but alleges that Bergdale made various monthly
10 "installments" up to October 2009, totaling $2,500.00, in a partial attempt to "make-up"
11 the missed payment. (*Id.* ¶¶ 39, 46.) In October 2009, Bergdale entered into a three-
12 month "Trial Modification Program" with BAC that temporarily reduced her monthly
13 payment to $2,325.00. (*Id*. ¶ 40.) She negotiated with BAC for her first trial program
14 payment date to occur on November 17, 2009. (*Id.*) Prior to making the payment a BAC
15 representative informed Bergdale that her October 2009 payment had not been posted and
16 recommended that she send another check. (*Id.* ¶ 43.) The BAC representative told her
17 that any previous check she had paid in October would be cancelled, if found, to avoid
18 duplicate payments. (*Id.*)

19 On November 23, 2009, BAC delivered a Notice of Intent to Accelerate that
20 informed Bergdale that she owed $9,007.80 on the loan and threatened to institute
21 foreclosure if she did not cure. (*Id.* ¶ 45.) Bergdale denied her alleged delinquency. (*Id.*
22 ¶ 46.) She contacted BAC and was informed instead that she owed $4,650.00. (*Id.* ¶ 47.)
23 Bergdale filed a letter of dispute asserting that two November payments of $2,325.00 had
24 been paid on her account, and asserting that BAC had posted the second November
25 payment in error and requesting reimbursement for the overdraft fees she incurred as a
26 result of the second November payment. (*Id.* ¶¶ 48-49.) After Bergdale sent her letter of
27 dispute, BAC told her that she owed $4,372.80 on her loan. (*Id.* ¶ 49.) Subsequently, she
28 received a second Notice of Intent to Accelerate that stated she owed $4,372.00, but was

then told on a phone call that she actually owed $7,568.30. (*Id.* ¶¶ 49-50.) It appears Bergdale applied for a loan modification in December 2009 because she received a letter stating that her permanent modification would raise her payment to $3,541.27; however, a later letter declined Bergdale's application, and she was contacted by BAC, who claimed she owed a balance of $7,712.30. (*Id.* ¶¶ 52-54, 56.)

Bergdale made six months of payments in the amount specified in the previous three-month trial program. (*Id.* ¶¶ 57-58.) BAC and Bergdale agreed to a permanent loan modification on November 29, 2010. (Doc. 8, Ex. 1 at 1.)[2] Under the terms of the Loan Modification Agreement, Bergdale agreed that she owed $604,324.81 on the loan and that modified payments would begin in January 2011. (*Id.*) In January 2011, she received an invoice that listed three "pick-a-payment" choices for that month: (1) an interest-only payment of $2,395.39, (2) a 15-year amortized payment of $5,916.17, or (3) an amortized payment of $3,047.97. (Doc. 10 ¶ 61.) Bergdale selected the interest-only payment and made the $2,395.39 payment for both January and February. (*Id.* ¶¶ 61-62.) She received a letter informing her that her March payment would increase to offset the interest-only payments she made for both January and February. (*Id.* ¶ 63.) The Complaint does not allege what the revised payment was in March or anytime subsequent to that notice. The Complaint does allege, however, that Bergdale sent a check for the April payment in the amount of $3,156.14. (*Id.*) A Notice of Intent to Accelerate arrived on April 18, 2011, that claimed Bergdale owed $3,808.71. (*Id.* ¶ 64; Doc. 8, Ex. 2 at 1.)[3]

On October 18, 2011, MERS assigned all of its beneficial interest to Bank of America. (Doc. 10 ¶ 71, Ex. B.) The Assignment was signed by Christopher Herrera, who was listed as the assistant secretary of MERS. (*Id.*) Bank of American then exercised

---

[2] The Court takes judicial notice of the Loan Modification Agreement because it is a document "whose contents are alleged in a complaint and whose authenticity no party questions, but which [is] not physically attached to the [plaintiff's] pleading," *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir.2005) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir.1999) (alteration in original).

[3] The Court also takes judicial notice of the April 2011 Notice of Intent to Accelerate.

its power as beneficiary to appoint ReconTrust Company as the successor trustee on November 29, 2011. (*Id.* ¶ 84, Ex. C.) That same day, ReconTrust filed a Notice of Trustee's Sale to take place on March 7, 2012. (*Id.* ¶ 84, Ex. D.) Plaintiff received a copy of this Notice of Trustee's Sale. (*Id.* ¶ 65.) No sale appears to have taken place as of yet.

Bergdale filed her complaint against Countrywide, Bank of America, BAC, MERS, and ReconTrust (the "Defendants") in Arizona Superior Court on Mar. 2, 2012. (Doc. 1, Ex. 1), and the action was subsequently removed to this Court (Doc. 1). Bank of America and Countrywide Bank filed a Motion to Dismiss on April 10, 2012 (Doc. 9). Bergdale subsequently amended her complaint on April 27, 2012 (Doc. 10.), which mooted the first Motion to Dismiss (Doc. 15). All Defendants joined the current Motion to Dismiss on May 14, 2012. (Doc. 14.)

**DISCUSSION**

**I.    LEGAL STANDARD**

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When a complaint does not "permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation omitted).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

## II. ANALYSIS

Bergdale's First Amended Complaint contains seven counts against the Defendants: (1) Claim Under A.R.S. § 33-420 for Recording False Statements, (2) Consumer Fraud, (3) Quiet Title, (4) Breach of the Duty of Good Faith and Fair Dealing, (5) Negligent Performance of an Undertaking, (6) Violations of the Fair Debt Collection Practices Act, and (7) Negligence Per Se. (Doc. 10 ¶¶ 101-97.) Bergdale requests declaratory, injunctive, and monetary relief. For the reasons discussed below, Bergdale has failed to state a claim under Rule 12(b)(6) with regard to all Counts.

### A.   Recording False Statements

Bergdale claims that the Assignment (Doc. 10 Ex. B), the Substitution of Trustee (*Id.* Ex. C), and Notice of Trustee Sale (*Id*. Ex. D) (collectively, "the documents") all violate Arizona Revised Statutes ("A.R.S.") § 33-420. A.R.S. § 33-420 states that "[a] person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the office of the county recorder, knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is liable to the owner or beneficial title holder of the real property." Bergdale asserts that the documents contain numerous material misstatements and false claims. (Doc. 10 ¶¶ 101-26.) Her assertions undergirding the alleged misstatements and false claims are that none of the Defendants had authority to make the assignment, substitution, or notice—MERS is not a valid beneficiary, was not in possession of the promissory note and therefore had no

authority to assign its interest to Bank of America (*Id.* ¶¶ 103-07); Bank of America is not the "Lender," received an invalid assignment (because MERS could not assign its interest separate from the note), and thus could not substitute a trustee (*Id.* ¶¶ 108-17); and ReconTrust could not file a Notice of Trustee Sale because it was not a trustee, and so forth (*Id.* ¶¶ 118-119).

To the extent that Bergdale's claim amounts to a facial attack on the validity of the MERS system and a tidy repackaging of a "show me the note" argument, the claim is meritless. *See Hogan v. Wash. Mutual Bank, N.A.*, ___ Ariz. ___, ___, 277 P.3d 781, 783 (2012) ("[T]he deed of trust statutes impose no obligation on the beneficiary to 'show the note' before the trustee conducts a non-judicial foreclosure."); *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1042 (9th Cir. 2011) ("None of their allegations indicate that the plaintiffs were misinformed about MERS's role as a beneficiary, or the possibility that their loans would be resold and tracked through the MERS system . . . . By signing the deeds of trust, the plaintiffs agreed to the terms and were on notice of the contents.") As this Court has noted repeatedly, there is no "legal support for the proposition that the MERS system of securitization is so inherently defective so as to render every MERS deed of trust completely unenforceable and unassignable." *In re Mortgage Elec. Registration Sys. (MERS) Litig.*, MDL 09-2119-JAT, 2011 WL 4550189 at *4 (D. Ariz. Oct. 3, 2011). Tellingly, Bergdale cites no case law that supports her argument against the MERS system.

Insofar as Bergdale argues that the documents were false because Herrera did not have authority to sign as an Assistant Secretary of MERS, that too has no legal support. Bergdale bases this claim on the assertion that Herrera "claimed to be an Assistant Secretary of [MERS] as Nominee for Countrywide[, but] Herrera actually appears to be an employee of BAC Home Loans Servicing, LP." (Doc. 10 ¶ 71.) "Plaintiff's allegation, however, rests on the faulty assumption that [Herrera] could not be an officer of both [BAC] and MERS." *Steers v. CitiMortgage, Inc.*, CV-11-1144-PHX-GMS, 2011 WL 6258219 at *3 (D. Ariz. Dec. 15, 2011). "MERS relies on its members to have someone

on their own staff become a MERS officer with the authority to sign documents on behalf of MERS." *Cervantes*, 656 F.3d at 1040. Bergdale pleads no fact that suggests Herrera was not an Assistant Secretary of MERS. And so even if Herrera was a BAC employee, there is no allegation backed up by any facts that he was not authorized to sign as an Assistant Secretary of MERS.

In any event, the alleged false recordings—the Assignment, Substitution of Trustee, and Notice of Trustee Sale—are not covered by the statute. *McIntosh v. IndyMac Bank, FSB*, CV-11-1805-PHX-GMS, 2012 WL 176316 at \*3 (D. Ariz. Jan. 23, 2012) ("[C]ourts in this District have routinely held that assignments and notices of trustee's sale do not constitute claims of 'interest in, or a lien or encumbrance against, real property' as defined by A.R.S. § 33–420(a)."); *In re MERS*, 2011 WL 4550189 at \*5-6 (same); *Schayes v. Orion Fin. Group, Inc.*, CV–10–02658–PHX–NVW 2011 WL 3156303, at \*6 (D. Ariz. July 27, 2011) ("The allegedly offending recordation is always some sort of document purporting to create an interest, lien, or encumbrance, such as a lis pendens, mechanics lien, or the deed of trust itself. [collecting cases] The Court could locate no authority applying [A.R.S. § 33-420] to assignments of mortgages and notices of trustee's sales."); *In re Vasquez*, Bankruptcy No. 4:08–BK–15510–EWH 2010 WL 3084975, at \*1 (Bankr. D. Ariz. Aug. 5, 2010) ("In recording the Assignment, [the defendant] was not purporting to claim an interest in the Plaintiff's property. A.R.S. § 33–420 simply does not apply to the facts here."). Plainly, assignments of deeds of trusts, substitutions of beneficiary, and notices of trustee's sale do not "create an interest" in property such that A.R.S. § 33-420 applies. Consequently, Count One will be dismissed.

### B. Consumer Fraud

Bergdale next alleges that BAC and Bank of America violated Arizona's Consumer Fraud Act ("CFA"), A.R.S. § 44-1522A, which prohibits the use of "any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection

with the sale or advertisement of any merchandise." "To succeed on a claim of consumer fraud, a plaintiff must show a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and consequent and proximate injury resulting from the promise." *Kuehn v. Stanley*, 208 Ariz. 124, 129, 91 P.3d 346, 351 (Ct. App. 2004). A plaintiff must also allege reliance—though it need not be reasonable—on the misrepresentations. *Id.*

In a fraud claim, a plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9 requires allegations of fraud be pled with particularity, even if they are brought under the [CFA]." *Silving v. Wells Fargo Bank, NA*, 800 F. Supp. 2d 1055, 1075 (D. Ariz. 2011); *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) ("It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action. While a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule.") (internal quotation marks and citation omitted, alterations removed).

Part of the CFA claim rests on the theory that BAC and Bank of America did not have the authority to foreclose on the property. (Doc. 10 ¶ 129.) That portion of the claim fails for the reasons described in Part II.A.

The remainder of Bergdale's claim is based on allegations that Bank of America and BAC engaged in deceptive practices while servicing her loan. (*Id.* ¶ 130.) Defendant seek to avoid these allegations by claiming that enforcement of a loan obligation is not a "sale or advertisement of any merchandise" within the meaning of A.R.S. § 44-1522A. Arizona law, however, views a loan as a "sale" and oral negotiations to restructure a loan as an "advertisement." *Villegas v. Transamerica Financial Services, Inc.*, 147 Ariz. 100, 708 P.2d 781 (Ct. App. 1985); *see also Narramore v. HSBC Bank USA, N.A.*, 09-CV-635-TUC-CKJ, 2010 WL 2732815 (D. Ariz. July 7, 2010) (applying CFA to negotiations surrounding loan modification). Consequently, the CFA will apply to actions in

connection with the origination of a loan or a loan modification.

First, Bergdale alleges that Bank of America and BAC misrepresented amounts owed. (Doc. 10 ¶ 130.) Specifically, over the course of two weeks in November 2009 after Bergdale was approved for a trial modification program, different BAC representatives told Bergdale that she owed anywhere from $4,650.00 to $4,372.80 to $4,372.00 to $7,568.30 to $7,712.30. (*Id*. ¶¶ 45-56). Throughout this process, Bergdale received notices of intent to accelerate. (*Id.*) While this was certainly frustrating for Bergdale, she has not alleged that she relied on these statements to her detriment. The complaint merely lists these instances without providing any connection between the alleged misrepresentations and any action Bergdale may or may not have taken. Reliance is an essential element of a CFA claim, see *Kuehn*, 208 Ariz. at 129, and its absence in a complaint is fatal. The alleged misrepresentations regarding the amount owed cannot support a claim under the CFA.

Next, Bergdale states that Bank of America and BAC failed to follow through on loan modification requests. (Doc. 10 ¶ 130.) Plainly, however, Bergdale received a loan modification on November 19, 2010. (Doc. 8, Ex. 1 at 1.) Moreover, according to the complaint, Bergdale applied and was approved for two separate trial loan modification programs. (Doc. 10 ¶¶ 40, 58.) Bergdale also claims that Bank of America and BAC falsely assured her that foreclosure would not take place while her modification request was pending. (*Id.* ¶ 130.) Yet nowhere in Bergdale's complaint does she state that, contrary to the assurances of Bank of American and BAC, foreclosure has occurred. These allegations fail to state a claim under the CFA.

Bergdale next declares that Bank of America and BAC misrepresented that her trial modification would convert into a permanent modification. (*Id.*) It is unclear to which trial modification Bergdale is referring. With regard to the first trial modification, she specifically states in her complaint that it was a "three-month" program and does not set out any representation by BAC or expectation on her part that the three-month program would become permanent. (*Id.* ¶ 40.) And by the very terms of the complaint,

- 9 -

the second trial modification program did become a permanent modification. (*Id.* ¶¶ 58-60.) These contentions do not support a claim under the CFA.

Bergdale additionally asserts that Bank of America and BAC misrepresented the eligibility criteria for loan modification. (*Id.* ¶ 130.) The complaint is devoid of allegations that support this claim. And besides, Bergdale actually received a modification. (*Id.* ¶ 60.) No support for a CFA claim exists here.

The next allegation concerns a false declaration by Bank of America and BAC that Bergdale was in default. (*Id.* ¶ 130.) The complaint does not entirely make clear what declaration of default supports this claim. Bergdale received the first Notice of Intent to Accelerate in November 2009. (*Id.* ¶ 45.) While denying that she owed the amount stated on the notice, Bergdale does admit that she owed at least $300.00 in connection with a missed payment. (*Id.* ¶ 46.) Thus the allegations of the Complaint do nothing to establish that the Defendants did not have the right to accelerate the Note. The second Notice of Intent to Accelerate arrived in April 2011, and nowhere does Bergdale deny that she was in default at that point. Bergdale has not alleged a false declaration under the CFA.

In her final allegation supporting her CFA claim, Bergdale alleges that Bank of America and BAC misrepresented the terms of the loan modification. (*Id.* ¶ 130.) It appears that the misrepresentation to which Bergdale refers surrounds the "pick-a-payment" invoice she received in January 2011 (*Id.* ¶¶ 61-63, 130.) Bergdale believed that the "pick-a-payment" invoice was a permanent payment modification. (*Id.*) But she never alleges that BAC or Bank of America told her otherwise, and she specifically alleges that the "letter described her modification payment choices, 'Your payment choice for *this month*[.]'" (*Id*. ¶ 61) (emphasis added). There are no allegations that support a claim of misrepresentation regarding the terms of a loan modification.

In short, Bergdale's complaint fails to state a claim for relief under the CFA, and Count Two will be dismissed.

### C.     Quiet Title

Bergdale next attempts to bring a quiet title claim against the Defendants under

A.R.S. § 12-1101, which states that "[a]n action to determine and quiet title to real property may be brought by anyone having or claiming an interest therein, whether in or out of possession, against any person or the state when such person or the state claims an estate or interest in the real property which is adverse to the party bringing the action." Under long-established Arizona law, however, a plaintiff cannot bring a quiet title action unless she has paid off her mortgage in full. *Farrell v. West*, 57 Ariz. 490, 491, 114 P.2d 910, 911 (1941) ("[I]f it appears there is an unsatisfied balance due a defendant-mortgagee, or his assignee, the court will not quiet the title until and unless [the plaintiff-mortgagor] pays off such mortgage lien."); *Eason v. Indymac Bank*, CV 09–1423–PHX–JAT 2010 WL 1962309, at *2 (D. Ariz. May 14, 2010) ("[Q]uiet title is not a remedy available to the trustor until the debt is paid or tendered."); *Frazer v. Millennium Bank*, 2:10–cv–01509 JWS 2010 WL 4579799, at *4 (D. Ariz. Oct. 29, 2010) (same). In the instant case, Bergdale does not allege that she owes no balance on her mortgage. The plain allegations of her Complaint suggest otherwise. She has entered into several loan modification agreements with BAC and Bank of America. Such agreements imply that Bergdale still has a balance on her loan. Nor does she allege that she is "ready, willing and able," *Eason*, 2010 WL 1962309, at *2, to pay off her loan. She has therefore failed to state a valid quiet title claim.

### D. Breach of Good Faith and Fair Dealing

Bergdale contends that the Defendants breached their duty of good faith and fair dealing. (Doc. 10 ¶¶ 147-64.) "Arizona law implies a covenant of good faith and fair dealing in every contract." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 490, 38 P.3d 12, 28 (2002). "The implied covenant of good faith and fair dealing prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement." *Id.* Whether a party has acted in bad faith depends upon the reasonableness of its conduct. *Deese v. State Farm Mut. Auto. Ins. Co.*, 172 Ariz. 504, 507, 838 P.2d 1265, 1268 (1992). Mere negligence, however, is insufficient—the party

must act with the knowledge that its conduct is unreasonable. *Id.*

Much of Bergdale's claim rests on the assertion that the Defendants lacked authority to assign or transfer the deed, or file a notice of trustee sale. (*Id.* ¶¶ 157-58.) These allegations, as discussed above in Part II.A, do not state a claim for breach of good faith and fair dealing. Moreover, many of Bergdale's other claimed breaches of good faith sound in simple negligence: "failing to properly supervise employees/executives," "failing to employ adequate and competent staff," "failing to purchase and maintain adequate office equipment and databases," "failing and refusing to provide accurate contact information for employees," "routinely demanding information already in its files," "misallocating payments," and "making inaccurate calculations." (Doc. 10 ¶ 158.) Without more, these allegations fail to state a claim for a breach of the duty of good faith and fair dealing because there are no allegations that the Defendants acted knowing that their conduct was unreasonable. *See Deese*, 172 Ariz. at 507-08. Bergdale does allege one instance of intentional misconduct: the Defendants "lur[ed] Plaintiff into default and engage[d] in concealment and misrepresentation by putting payments in suspense, [and] not crediting payments to interest and principal strictly per terms of the Note." (Doc. 10 ¶ 158.) While this claim sounds like bad faith, Bergdale has not provided any allegations to support it. At best, the Complaint recites instances of payment miscalculation, but not actions that indicate actual "luring" or "concealment." (*Id.*) Without more, Bergdale's claim does not the plausibility threshold required by Rule 8. She has failed to state a claim for breach of the duty of good faith and fair dealing.

### E. Negligent Performance of Undertaking

Bergdale's fifth claim for relief is for negligent performance of undertaking. (Doc. 10 ¶¶ 165-80.) This "Good Samaritan" doctrine allows recovery from those who undertake to render services but fail to exercise reasonable care in the performance of the undertaking. *Lloyd v. State Farm Mut. Auto. Ins. Co.*, 176 Ariz. 247, 250, 860 P.2d 1300, 1303 (Ct. App. 1992). The Good Samaritan doctrine applies to allegations of both physical and economic harm. *Id.* Liability attaches when the party's "failure to exercise

[reasonable] care increases the risk of [physical or economic harm] or [t]he harm is suffered because of the other's reliance upon the undertaking." *Id.* As a basis for her claim, Bergdale alleges that BAC and Bank of America acted throughout the loan modification process in a way that increased the likelihood of default. (Doc. 10 ¶¶ 168-79.) Specifically, she alleges she "was told by BAC that she had to be in default to receive help" and then "discontinued making payments to the alleged servicer as a result." (*Id.* ¶¶ 167-70.) This claim is difficult to square with the fact that Bergdale actually received a modification in November 2010 as a result of her negotiations with BAC and Bank of America. (Doc. 8, Ex. 1.) Loan modifications help a party already in default to avoid, not invite, foreclosure. The alleged actions surrounding the loan modification do not support a Good Samaritan claim.

Bergdale also alleges that BAC failed to exercise reasonable care while servicing her existing loan. (Doc. 10 ¶¶ 171-76.) She specifically refers to the problems of October and November 2009, when BAC allegedly applied a second payment incorrectly to her account, even after a representative assured her that any second payment would be cancelled. (*Id.* ¶¶ 42-50.) As depicted in the Complaint, however, the BAC representative was referring to Bergdale's October 2009 payment under the original payment schedule and not the November 2009 modified payment: "The male associate concluded that he could not see that the payment (scheduled on October 23, 2009) had posted so he recommended that Plaintiff pay again." (*Id.* ¶ 43.) The modified payment plan did not come into play until November 13, 2009. Thus Bergdale did make two payments of $2,325.00 in November, but not for the same obligation—one was for October 2009 and the other for November 2009. (*Id.* ¶¶ 39-40, 43.) The October payment, however, should have been at the previous $3,195.50 rate because the modification program had not yet taken effect. Nowhere does Bergdale allege that she had previously made a satisfactory October payment. BAC therefore appears to have had every right to both accept two payments and also declare a default. Bergdale fails to allege a valid Good Samaritan claim.

### F. Fair Debt Collection Practices Act

Bergdale alleges that the Defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et. seq (2006). The FDCPA prohibits certain abusive practices by "debt collectors," which have a specific statutory definition. *Id.* § 1692a(6). The FDCPA does not apply to any of the alleged actions by the Defendants because mortgagees and their beneficiaries are not debt collectors and a non-judicial foreclosure proceeding is not the collection of a debt under the FDCPA. *See Mansour v. Cal-W. Reconveyance Corp.*, 618 F. Supp. 2d 1178, 1182 (D. Ariz. 2009); *Diessner v. Mortgage Elec. Registration Sys.*, 618 F. Supp. 2d 1184, 1188-89 (D. Ariz. 2009) *aff'd sub nom. Diessner v. Mortgage Elec. Registration Sys., Inc.*, 384 F. App'x 609 (9th Cir. 2010). Bergdale consequently fails to state a claim under the FDCPA.

### G. Negligence Per Se

Bergdale's final claim is that the Defendants are guilty of negligence per se. (Doc. 10 ¶¶ 190-97.) She alleges that the notaries who notarized the Assignment, Substitution of Trustee, and Notice of Trustee Sale did not actually witness the signature or confirm the authority of the Defendants. (Doc. 10 ¶¶ 191-93.) However, "[t]hose who allow notaries to violate these laws do not themselves violate them." *Kentera v. Fremont Inv. & Loan*, CV-10-8259-PHX-GMS, 2012 WL 1132760 at *9 (D. Ariz. Apr. 4, 2012). Because only the actions of the notaries form the basis for Bergdale's negligence per se claim, it will be dismissed.

### CONCLUSION

Because Bergdale has failed to allege facts sufficient to support any of the Counts in her Complaint, it must be dismissed pursuant to Rule 12(b)(6). Bergdale will have leave to amend her Complaint within thirty (30) days from today's date to the extent that she believes that factual allegations may save any count that has been inadequately plead. Any count that has been dismissed as a matter of law, should not be amended. Should Bergdale fail to submit a Second Amended Complaint within thirty (30) days, the clerk is directed to terminate this matter.

**IT IS HEREBY ORDERED** that the Motion to Dismiss filed by the Defendants (Doc. 14) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff shall have thirty (30) days from the date of this Order in which to file a Second Amended Complaint.  Should Plaintiff fail to file a Second Amended Complaint within that time, the Clerk of Court is directed to terminate this matter.

Dated this 18th day of September, 2012.

/G. Murray Snow
United States District Judge