1  **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9  Rozann G. Bergdale,                    )     No. CV-12-8057-PCT-SMM
                                          )
10           Plaintiff,                   )
                                          )
11  v.                                    )     **MEMORANDUM OF DECISION**
                                          )              **AND ORDER**
12  Countrywide Bank FSB, et al.,         )
                                          )
13           Defendants.                  )
                                          )
14  _____  )

15        Pending before the Court is Defendants' motion for summary judgment, which is fully

16  briefed.  (Docs. 47-49, 55-59.)  After reviewing the briefs and having determined that oral

17  argument is unnecessary,[1] the Court will grant Defendants' motion for summary judgment.

18                                  **BACKGROUND**

19        The Court, through Judge Murray Snow, has previously presented the factual

20  background of this case.

21              Plaintiff Rozann Bergdale ["Bergdale"] purchased a home in Yavapai
            County, Arizona, around October 26, 2007. (Doc. 21 ¶ 14; id., Ex. A at 1-3.)
22          To finance this purchase, she obtained a loan of $576,000.00 from Defendant
            Countrywide Bank. (Id., Ex. A at 1-2.)  The parties executed and recorded the
23          Deed of Trust ("DOT")[Ftnt. 1] in the office of the Yavapai County Recorder on
            Oct. 31, 2007. (Id. ¶ 14.)
24
                [Ftnt. 1]The Court takes judicial notice of the DOT and subsequent
25          assignments because they are documents "whose contents are
            alleged in a complaint and whose authenticity no party
26

27  _____

28        [1]The request for oral argument is denied because the parties have had an adequate
    opportunity to present their written arguments and oral argument will not aid the Court's
    decision.  See Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev., 933 F.2d 724, 729
    (9th Cir. 1991).

questions, but which are not physically attached to the [plaintiff's] pleading," Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999) (alteration in original).

The DOT designates Countrywide as the "Lender," Fidelity National Title Insurance as the "Trustee," and Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") as "the beneficiary under this Security Instrument" and "nominee for Lender and Lender's successors and assigns." (Id. Ex. A at 1-2.) Subsequently, Defendant Bank of America [("BANA")] acquired Countrywide, and Defendant BAC Home Loan Servicing, [] began servicing the loan. (Id. ¶¶ 2, 5-6.)

Bergdale's monthly payment, including principal, interest, escrow, and other charges was originally $3,195.50. (Id. ¶ 29.) At some point, Bergdale missed a monthly payment, but she alleges that she made up for that missed payment in various monthly "installments," totaling $2,500.00. (Id. ¶¶ 30, 37.) In October 2009, Bergdale entered into a three-month "Trial Modification Program" with BAC that temporarily reduced her monthly payment to $2,325.00. (Id. ¶ 31.) She negotiated with BAC for her first trial program payment to occur on November 17, 2009. (Id.) Bergdale contacted BAC on November 13 to determine whether the check she sent for the first trial payment had posted. (Id. ¶ 34.) The BAC representative could not see the payment and recommended that Bergdale send another check. (Id.) The BAC representative assured her that any previous check she had sent for the November payment, if found, would be cancelled to avoid duplicate payments. (Id.)

On November 23, 2009, BAC delivered a Notice of Intent to Accelerate that claimed Bergdale owed $9,007.80 on the loan and threatened to institute foreclosure if she did not cure. (Id. ¶ 36.) Bergdale alleges that "NO PAYMENT WAS LATE AT ALL", and claims she was current on her payments. (Id. ¶ 37.) She reached out to BAC and was informed that her balance was now $4,650.00 because BAC had applied two payments of $2,325.00 to her account. (Id. ¶¶ 38-39.) Bergdale filed a letter of dispute asserting that BAC had posted the second November payment in error and requesting reimbursement for the overdraft fees she incurred as a result of the second November payment. (Id. ¶ 40.) After Bergdale sent her letter of dispute, BAC told her that she actually owed $4,372.80 on her loan. (Id.) Subsequently, she received a second Notice of Intent to Accelerate that stated she owed $4,372.00, but was then told on a phone call that she actually owed $7,568.30. (Id. ¶¶ 40-41.) The dispute over what Bergdale owed stretched into December. (Id. ¶¶ 43-45, 47.) There was also a dispute between Bergdale and BAC as to whether she had been paying property taxes. (Id. ¶¶ 33, 41-42.) Throughout the back-and-forth with BAC, Bergdale denied any delinquency. (Id.) Outside of phone calls, though, no specific action was taken by either party at this time.

Bergdale made six months of payments in the amount specified in the previous three-month trial program. (Id. ¶¶ 48-49.) The following November, BAC and Bergdale agreed to a permanent loan modification. (Doc. 21-5, Ex. E at 1.)[Ftnt. 2] Bergdale agreed that she owed $604,324.81, an addition of about $25,000 to the principal. (Id.; id. ¶ 50.) The parties also agreed that, beginning December 1, 2010, Bergdale's monthly principal and interest payment would be $2,163.39 until December 2013, when it would increase. (Doc. 21-5, Ex.

E at 3.)

> [Ftnt. 2] The Court takes judicial notice of the Loan Modification Agreement.

When Bergdale received her statement on December 20, it offered three payment choices for the month of January: (1) An interest only payment of $2,395.39, consisting of a $1,510.81 interest payment plus $884.58 of "outstanding late charges" and "amounts collected for escrow items such as taxes and insurance premiums"; (2) a 15-year Amortized Payment Choice of $5,916.17, consisting of a principal and interest payment of $5,031.59 plus charges; and (3) an Amortized Payment Choice of $3,047.97, consisting of a $2,163.39 principal and interest payment plus charges. (Doc. 21-6, Ex. F at 3.)[Ftnt. 3] Bergdale selected the interest-only payment and made the $2,395.39 payment for both January and February. (Id. ¶¶ 52-53.)

> [Ftnt. 3] The Court likewise takes judicial notice of the December 20 statement.

She received a letter informing her that her March payment would increase to offset the interest-only payments she made for both January and February. (Id. ¶ 54.) The SAC [Second Amended Complaint] does not allege what the revised payment was in March or anytime subsequent to that notice. Bergdale did, however, send a check in April for $3,156.14. (Id.) A Notice of Intent to Accelerate arrived on April 18, 2011, that claimed Bergdale owed $3,808.71. (Id. ¶ 55.)

On October 18, 2011, MERS assigned all of its beneficial interest under the DOT to Bank of America. (Doc. 21-2, Ex. B.) Bank of America then exercised its power as beneficiary to appoint ReconTrust Company as the successor trustee on November 29, 2011. (Doc. 21-3, Ex. C.) That same day, ReconTrust filed a Notice of Trustee's Sale to take place on March 7, 2012. (Doc. 21-4, Ex. D.) Bergdale received a copy of this Notice of Trustee's Sale. (Id. ¶ 56.) No sale appears to have taken place as of yet.

(Doc. 37 at 1-4.)

Procedural Background

Bergdale filed a complaint against the Defendants in Arizona Superior Court on March 2, 2012 (Doc. 1, Ex. 1), and the action was subsequently removed to this Court. (Doc. 1.) Defendants then moved to dismiss the complaint. (Doc. 9.) In response, Bergdale filed her First Amended Complaint ("FAC"). (Doc. 10.) Defendants again moved to dismiss. (Doc. 14.) Judge Snow dismissed the FAC, but granted Bergdale one "very limited opportunity to amend," and only "to the extent that she believes that factual allegations may save any count that has been inadequately plead." (Doc. 20 at 1, 14.) Bergdale filed her Second Amended Complaint ("SAC"), which included a Consumer Fraud Act ("CFA")

1    count, a quiet title count, a breach of contractual good faith count, a negligent performance
2    of an undertaking count, and a Fair Debt Collections Practices Act count.  (Doc. 21.)
3    Defendants moved to dismiss the SAC.  (Doc. 27.)

4        Judge Snow granted Defendants' motion in part, dismissing Bergdale's quiet title
5    count, her negligent performance of an undertaking count, and her Fair Debt Collections
6    Practices Act count.  Judge Snow allowed Bergdale's CFA claim to proceed only based on:
7    1) Bergdale's allegation that she was defrauded when Defendants double-posted her
8    November 2009 trial loan modification payment, and 2) Bergdale's allegation that
9    Defendants misrepresented the amount she owed under the Final Loan Modification
10   Agreement in their December 2010 statement.  (Doc. 37 at 8-9.)  Bergdale's remaining
11   allegations of fraud under the CFA were dismissed.  (Id. at 9.)

12       Next, Judge Snow dismissed Bergdale's bad faith tort allegations, but allowed her
13   breach of contractual good faith allegations to proceed based on one allegation: that
14   Defendants did not honor the terms of her Final Loan Modification Agreement by issuing its
15   December 2010 statement that required escrow payments allegedly in excess of what she
16   owed.  (Id. at 11.)

17       On April 25, 2013, the matter was reassigned to this Court.  (Doc. 42.)  On August 29,
18   2013, Bergdale moved for leave to file a proposed Third Amended Complaint ("TAC"),
19   which sought to add an additional consumer fraud count, an additional bad faith count, and
20   to revive her false recording claim, A.R.S. § 33-420, based on allegations of new controlling
21   law.  (Id.)  The Court denied leave to amend due to Bergdale's lack of diligence and rejected
22   her contention that new intervening law revived her false recording claim.  (Doc. 54.)
23   Subsequently, the Court denied reconsideration finding that new intervening law did not
24   revive either her dismissed negligent performance of an undertaking claim or her dismissed
25   negligence per se claim.  (Doc. 65.)

26       At the dispositive motion deadline, Defendants moved for summary judgment based
27   on Bergdale's two remaining claims in the SAC: her claim under the CFA and her breach of
28   contractual good faith claim.  (Docs. 47-49.)

1

**STANDARD OF REVIEW**

2

<u>Summary Judgment</u>

3      A court must grant summary judgment if the pleadings and supporting documents,

4  viewed in the light most favorable to the nonmoving party, show "that there is no genuine

5  issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

6  R. Civ. P. 56(a); <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Jesinger v.</u>

7  <u>Nevada Fed. Credit Union</u>, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines

8  which facts are material. <u>See</u> <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986); <u>see also</u>

9  <u>Jesinger</u>, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit

10  under the governing law will properly preclude the entry of summary judgment." <u>Anderson</u>,

11  477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that

12  a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>; <u>see</u> <u>Jesinger</u>, 24 F.3d

13  at 1130.

14      A principal purpose of summary judgment is "to isolate and dispose of factually

15  unsupported claims." <u>Celotex</u>, 477 U.S. at 323-24. Summary judgment is appropriate

16  against a party who "fails to make a showing sufficient to establish the existence of an

17  element essential to that party's case, and on which that party will bear the burden of proof

18  at trial." <u>Id.</u> at 322; <u>see also</u> <u>Citadel Holding Corp. v. Roven</u>, 26 F.3d 960, 964 (9th Cir.

19  1994). The moving party need not disprove matters on which the opponent has the burden

20  of proof at trial. <u>See</u> <u>Celotex</u>, 477 U.S. at 323. The party opposing summary judgment may

21  not rest upon the mere allegations or denials of the party's pleadings, but must set forth

22  "specific facts showing that there is a genuine issue for trial." <u>See</u> <u>Matsushita Elec. Indus.</u>

23  <u>Co. v. Zenith Radio</u>, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963)

24  (amended 2010)) ; <u>Brinson v. Linda Rose Joint Venture</u>, 53 F.3d 1044, 1049 (9th Cir. 1995).

25  The non-movant's bare assertions, standing alone, are insufficient to create a material issue

26  of fact and defeat a motion for summary judgment. <u>Anderson</u>, 477 U.S. at 247–48.

27  ///

28  ///

1

**DISCUSSION**

2

*Arizona Consumer Fraud*

3      Bergdale alleges that Defendants' deceptive actions in the processing of her loan

4  violated the CFA, A.R.S. § 44-1522.  (Doc. 21 at 22-25.)  Two allegations remain under

5  Bergdale's CFA count, that Defendants collected twice on her November 2009 trial loan

6  modification payment and that Defendants misrepresented the amount she owed under the

7  final loan modification agreement in their December 2010 statement.

8      As a threshold matter, Defendants contend that Bergdale's remaining CFA allegations

9  are barred because allegations under the CFA carry a one-year statute of limitations and she

10  did not file her complaint within the applicable period.  (Doc. 47 at 5.)

11      A claim brought under the CFA, A.R.S. § 44–1522, must be brought within one year

12  after the statute of limitations begins to run.  <u>See</u> A.R.S. § 12–541(5) (2008).[2]  Under the

13  CFA, the statute of limitations begins to run "when the defrauded party discovers or with

14  reasonable diligence could have discovered the fraud." <u>Alaface v. Nat'l Inv. Co.</u>, 181 Ariz.

15  586, 591, 892 P.2d 1375, 1380 (App. 1994) (quoting <u>Mister Donut of Am., Inc. v. Harris</u>,

16  150 Ariz. 321, 323, 723 P.2d 670, 672 (1986).  The <u>Alaface</u> court further stated that the

17  limitations period  accrues "when the plaintiff knows or should have known of both the *what*

18  and *who* elements of causation."  181 Ariz. at 591, 892 P.2d at 1380 (emphasis in original)

19  (further citation omitted).

20      Defendants contend that Bergdale's remaining CFA allegations covered conduct that

21  _____

22      [2] A.R.S. § 12-541(5) (2008) provides, in pertinent part:

23              There shall be commenced and prosecuted within one year after
               the cause of action accrues, and not afterward, the following
24              actions:

25              . . .

26              5. Upon a liability created by statute, other than a penalty or
               forfeiture.

27

28

1   occurred in November 2009 and December 2010.  (See Doc. 37 at 8-11.) Defendants further
2   contend that Bergdale knew the "what" and "who" of these alleged events immediately upon
3   their occurrence. (Doc. 47 at 5.) In support, Defendants reiterate that in her SAC, Bergdale
4   acknowledges that she realized there was a so-called "double payment" and complained
5   about it directly to BANA in November 2009. (Doc. 21 at 8-9.)  Regarding the alleged
6   discrepancy in her final monthly payment amount, Defendants contend that Bergdale
7   possessed both the permanent loan modification agreement (which she executed) and her
8   December 2010 statement from Defendants, and thus knew or should have known about the
9   alleged discrepancy immediately. (Id. at 12-13.) However, despite knowing or having reason
10  to know of both potential claims, Bergdale did not file her CFA allegations until March 2012.
11  (Doc. 1.)  Therefore, Defendants contend that Bergdale's surviving theories are untimely
12  under the CFA's one-year statute of limitations.

13      The Court first finds that Bergdale knew both the "what" and "who" element
14  regarding both allegations of fraud.  Regarding the alleged double payment, Bergdale
15  acknowledged that she was assured by BANA that there would not be a double payment for
16  her November 2009 payment when she issued BANA a second check yet BANA did deposit
17  both her payments.  Regarding the alleged misrepresentation in her December 2010 statement
18  by BANA of the amount she owed under the Final Loan Modification Agreement, Bergdale
19  knew both the alleged misrepresentation and who made it.  On this record, the Court finds
20  that Bergdale's CFA allegations accrued in November 2009 and December 2010.  The Court
21  further finds that  Bergdale's remaining CFA allegations had a one-year statute of limitation
22  and that Bergdale's March 2012 complaint did not timely raise those allegations. They are
23  barred from consideration on the merits unless Bergdale demonstrates that the one-year CFA
24  statute of limitations is excused for some justifiable reason.

25      First, Bergdale contends that BANA waived its statute of limitations affirmative
26  defense by failing to raise it when it filed its previous motions to dismiss.  (Doc. 55 at 11.)
27  Bergdale also contends waiver because BANA failed to specifically plead the one-year CFA
28  statute of limitations in its answer but rather only asserted a laundry list of affirmative

1    defenses that included statutes of limitation.  (Id. at 12.)

2           As to Bergdale's waiver argument, BANA replies that only four defenses are waived

3    by not asserting them in a motion to dismiss: lack of personal jurisdiction, improper venue,

4    insufficient process, and insufficient service of process.  (Doc. 58 at 2, citing Fed. R. Civ. P.

5    12(h)(1).)  BANA therefore contends that a defendant does not waive its statute of limitations

6    defense by not raising it in a motion to dismiss.

7           The record establishes that BANA raised its affirmative defense of statute of

8    limitations in its answer.  (See Doc. 40 at 16.)  The Federal Rules of Civil Procedure provide

9    that BANA was not required to raise this defense in its previous motions to dismiss and

10   therefore it was not untimely.  See Rule 12(h)(1).  Indeed, a defendant may even raise an

11   affirmative defense for the first time in a motion for summary judgment so long as it does not

12   result in prejudice to the plaintiff.  See Rivera v. Anaya, 726 F.2d 564, 566 (9th Cir. 1984)

13   ("absent prejudice to the plaintiff, a defendant may raise an affirmative defense in a motion

14   for summary judgment for the first time").  Here, Bergdale was not prejudiced by BANA's

15   raising the statute of limitations defense in its answer because Bergdale was given a fair

16   opportunity to respond; she was not deprived of an opportunity to present argument in

17   opposition.  See Levald, Inc. v. City of Palm Desert, 998 F.2d 680, 687 (9th Cir. 1993).  The

18   Court finds that BANA did not waive its opportunity to raise a statute of limitations defense

19   under the CFA by raising it for the first time in its answer and not in its previous motions to

20   dismiss.

21          As to Bergdale's argument that BANA did not specify in its answer the limitations

22   defense under the CFA, "[t]he defense is sufficiently raised for purposes of Rule 8 by its bare

23   assertion. Identification of the particular statute relied upon, though helpful, is not required

24   in the pleading."  See Santos v. Dist. Council, 619 F.2d 963, 967 (2nd Cir. 1980).  The Court

25   finds that inclusion of the defense in an answer is sufficient to preserve the defense.  See

26   Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency, 216 F.3d 764, 788

27   (9th Cir. 2000), rev'd on other grounds, Gonzalez v. Arizona, 677 F.3d 383, 389 (9th Cir.

28   2012) (en banc).

1    Next, Bergdale argues that the discovery rule and equitable tolling excuse the late

2  filing of her complaint. (Doc. 55 at 13.) Bergdale first argues that the discovery rule excuses

3  her late filing because she failed to discover her injury despite diligence. (Id.)

4    Bergdale's discovery rule argument is without merit because Arizona utilizes the

5  discovery rule to determine when the statute of limitations begins to run for allegations under

6  the CFA. See Alaface, 181 Ariz. at 591, 892 P.2d at 1380. Thus, the Court has already

7  found that Bergdale's CFA allegations were not timely raised and are barred by the CFA

8  statute of limitations. Therefore, the discovery rule does not excuse her late filing.

9    As to Bergdale's argument that equitable tolling permits her to sue after the CFA

10 statute of limitations has expired, she claims that BANA fraudulently concealed its

11 wrongdoing. (Doc. 55 at 13-14.) According to Bergdale, BANA concealed material facts

12 in the modification process with the goal of forcing her into default and foreclosure. (Id.)

13 Although Bergdale acknowledges her awareness of BANA's errors, including her November

14 2009 double payment and the misrepresentation in her December 2010 statement, she alleges

15 that she did not know that BANA purposefully made the errors and did not intend to fix

16 them. (Id. at 14-15; see also Doc. 57 at 2-11.) Bergdale alleges that BANA induced her to

17 forego litigation and led her to believe that a settlement or adjustment of her claim would

18 occur without the necessity of bringing suit. (Doc. 55 at 14-15.) Based on BANA's

19 fraudulent concealment, Bergdale argues that the statute of limitations was not triggered until

20 BANA sought foreclosure of her home in November 2011 when it set the date for the

21 Trustee's sale. (Id.)

22    BANA denies any fraudulent concealment contending that Bergdale has failed to cite

23 any evidence to this effect. (Doc. 58 at 4.) Rather, BANA continues its contention that

24 Bergdale had notice of the double payment issue and that the different terms allegation were

25 apparent on the face of the loan documents. (Id.) Therefore, BANA contends that there is

26 no basis for equitable tolling of the CFA statute of limitations.

27    Arizona has recognized equitable exceptions to application of a statute of limitations

28 bar when necessary to prevent injustice. See Nolde v. Frankie, 192 Ariz. 276, 279, 964 P.2d

477, 480 (1998). To benefit from estoppel, a plaintiff needs to establish the following:  (1) specific promises, threats or inducements that prevented the plaintiff from filing suit; (2) the promises, threats, or representations actually induced the plaintiff to forbear filing suit; (3) the conduct reasonably caused the plaintiff to forbear filing a timely action; and (4) the plaintiff filed suit within a reasonable time after the estoppel-inducing conduct ended. Id. at 280-281.

The Court's review of Bergdale's declaration does not establish the requisite elements for a finding that she is entitled to equitable tolling of the limitations period. (Doc. 57 at 2-11.) Her declaration does not identify some specific promise or representation made by BANA that induced her not to timely file suit. (Id.) Rather, her declaration demonstrates her awareness of her dispute with BANA over her November 2009 double payment and the alleged misrepresentation in her December 2010 mortgage statement from BANA. (Id.) Based on Bergdale's declaration, no reasonable jury could find for Bergdale on one or more of these inquiries.  (Id.)  Consequently, she is not entitled to equitable tolling of the limitations period.

The Court, having considered and rejected all of Bergdale's arguments, finds that Bergdale's CFA allegations are barred from consideration on the merits due to her failure to file suit on these allegations before the one-year CFA statute of limitations expired.

*Breach of Contract*

BANA argues that in order for Bergdale to prove a prima facie case of breach of contractual good faith, she must allege damages arising out of her remaining allegation–that Defendants did not honor the terms of the Final Loan Modification Agreement by issuing its December 2010 statement requiring escrow payments allegedly in excess of what Bergdale owed. (Doc. 47 at 8-9.) BANA contends that Bergdale fails to disclose requisite contract damages arising out of this claim, and therefore it is entitled to judgment. (Id.)

In response to Defendants' motion, Bergdale contends that she did set forth her damages. (Doc. 55 at 22.) She states that her damages include the loss of payments she made to BANA and BAC under their mistaken representations, the loss of her retirement

1  funds, the damage to her credit, the difference between the loan promised and the loan given,

2  default charges, false late charges, the threatened and imminent loss of a unique piece of real

3  property, the inability to sell her real property, clouds to title to real property, the cost of

4  hiring an attorney, and other damages. (Id., citing Doc. 21, SAC at ¶¶145-46.)

5          In reply, BANA asserts that Bergdale must produce evidence of contract damage

6  sufficient to raise a genuine issue of material fact for trial. (Doc. 58 at 8.) BANA contends

7  that Bergdale's recitation of damages is not connected to the breach of contract claim that

8  survived dismissal–that BANA allegedly demanded escrow payments not due under the Final

9  Loan Modification Agreement. (Id. at 8-9.) Due to Bergdale's failure, BANA contends that

10 it is entitled to summary judgment. (Id.)

11         The Court agrees with BANA that Bergdale has failed to support her remaining

12 allegation arising from her breach of contractual good faith claim. In a prior Order, based

13 on Bergdale's allegations under the SAC, Judge Snow summarized her claim, as follows:

> 14    Defendants "did not honor the terms of the Final Loan Modification" by
>        issuing the December 2010 statement that required escrow payments allegedly
> 15    in excess of what she owed, as discussed above. (Doc. 21 ¶ 128.) That
>        allegation, taken to be true, states a claim that Defendants breached the
> 16    modification agreement. Consequently, Bergdale's good faith claim survives
>        on this basis alone.
17

18 (Doc. 37 at 11.) Bergdale has not supported this claim with evidence demonstrating that

19 BANA required escrow payments in excess of what she owed. The Final Loan Modification

20 Agreement specifically references only Bergdale's principal and interest payment, which was

21 $2,163.39 as of December 1, 2010. (See Doc. 21-5.) Bergdale's December 2010 statement

22 allows Bergdale to make an interest only payment of $2,395.39, which includes the escrow

23 amounts (real estate taxes, home and mortgage insurance) that BANA paid on Bergdale's

24 behalf. (See Doc. 21-6 at 3.) The statement also provides that her payment will increase

25 "after the Interest-Only Period ends." (Id.) It is undisputed that Defendants sent a letter

26 indicating that Bergdale's March 2011 payment would increase. (Doc. 56 at 10; Doc. 21-6

27 at 3.) From March 2011 to July 2011, Bergdale sent Defendants her mortgage payment of

28 $3,156.14. (Doc. 56 at 10-11; Doc. 59 at 6.)

In summary, Bergdale has produced no evidence showing that BANA required her to make escrow payments in excess of what she owed; rather, Bergdale summarizes her damages stating that her breach of good faith contract damages includes the loss of payments she made to BANA and BAC under their mistaken representations, the loss of her retirement funds, the damage to her credit, etc.  (Doc. 55 at 22.)  Because Bergdale did not produce evidence of contract damages in support of this claim, there is no evidence upon which a reasonable jury could find that BANA required that Bergdale pay escrow payments in excess of what she owed.  Therefore, BANA is entitled to summary judgment on Bergdale's breach of contractual good faith claim.

### CONCLUSION

Accordingly, on the basis of the foregoing,

**IT IS HEREBY ORDERED GRANTING** Defendants' motion for summary judgment.  (Doc. 47.)

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in favor of Defendants and terminate this case.

DATED this 25th day of June, 2014.

Stephen M. McNamee
Senior United States District Judge

- 12 -